# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02896-NYW

PATRICK RICONTI and
MELISSA RICONTI,

    Plaintiffs,

v.

DILLON COMPANIES, LLC,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

This matter comes before the court on Plaintiffs Patrick Riconti ("Mr. Riconti") and Melissa Riconti's ("Ms. Riconti" and collectively, "Plaintiffs") Motion for Partial Summary Judgment (or "Motion"), filed August 16, 2019. [#32]. The undersigned considers the Motion pursuant to 28 U.S.C. § 636(c) and the Order of Reference dated December 5, 2018. [#16]. Having reviewed the Motion and associated briefing, the applicable case law, and the entire record, I **DENY** the Motion for Partial Summary Judgment for the reasons stated herein.

## PROCEDURAL HISTORY

This civil action arises out of injuries sustained by Mr. Riconti during a magazine rack delivery to a City Market owned by Defendant Dillon Companies, LLC ("Defendant" or "Dillon Companies"). Plaintiffs filed this action in Summit County District Court on October 11, 2018, after Mr. Riconti sustained injuries at a City Market in Dillon, Colorado on October 20, 2016. [#3 at ¶¶ 2, 6]. Plaintiffs assert two claims for relief: (1) premises liability pursuant to Colo. Rev. Stat.

§ 13-21-115 by Mr. Riconti and against Defendant, and (2) loss of consortium by Ms. Riconti and against Defendant. [#3].

Dillon Companies removed the action to the United States District Court for the District of Colorado on November 9, 2018, on the basis of diversity. [#1]. The Parties consented to the jurisdiction of a Magistrate Judge, *see* [#15], and the Honorable Marcia S. Krieger subsequently referred this case to the undersigned to fully preside over for all purposes, [#16].

Plaintiffs filed the instant Motion for Partial Summary Judgment on August 16, 2019, arguing for summary judgment of liability on their Colorado Premises Liability Act, C.R.S. § 13-21-115 ("the Act"), claim against Dillon Companies. *See* [#32]. Dillon Companies has since responded in opposition to the Motion for Partial Summary Judgment[1] and Plaintiffs replied. *See* [#36; #38]. Because the Motion is now ripe, I consider the Parties' arguments below.

## LEGAL STANDARDS

### I. Summary Judgment Pursuant to Fed. R. Civ. P. 56

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.,* 41 F.3d 567, 569 (10th Cir. 1994). "A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty*

---

[1] In addition, Defendant seeks summary judgment in its favor in its Response. *See* [#36 at 9]. But D.C.COLO.LCivR 7.1(d) prohibits the inclusion of a motion in a party's Response. Moreover, the court set August 16, 2019 as the deadline for dispositive motions, *see* [#18], rendering Defendant's Motion for Summary Judgment untimely given that it filed its Response on September 20, 2019. Defendant did not seek or receive leave to file a dispositive motion out of time. Accordingly, the court considers Defendant's filing as its Response to Plaintiffs' Motion for Summary Judgment only.

2

*Lobby*, 477 U.S. 242, 249 (1986)). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal citations and quotation marks omitted). In other words, a fact is "material" if it pertains to an element of a claim or defense and a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *See Anderson*, 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 587 (1987) (citing *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). It is the movant's burden to demonstrate that no genuine dispute of material fact exists for trial, whereas the nonmovant must set forth specific facts establishing a genuine issue for trial. *See Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). And the court will "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant." *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016).

## ANALYSIS

### I. Undisputed Material Facts

This court draws the following material facts from the record. On October 20, 2016, Plaintiffs were making a freight delivery[2] at the loading dock of the City Market located at 300

---

[2] The Parties stipulated to this fact in the court's December 19, 2018 Scheduling Order. *See* [#19]. Nevertheless, in Response to Plaintiffs' Motion for Partial Summary Judgment, Defendant argues that Mr. Riconti was not making a delivery to the Premises but instead was merely accompanying Ms. Riconti on her delivery to the Premises. [#36 at ¶¶ 2, 3]. In Reply, Plaintiffs argue that Defendant stipulated to the fact that Mr. Riconti was working as a truck driver for Roadlink Express. [#32 at ¶ 2; #38 at 7]. "Litigation stipulations can be understood as the analogue of terms binding parties to a contract," *Lincoln v. BNSF Railway Co.*, 900 F.3d 1166, 1186 (10th Cir. 2018)

Dillon Ridge Road, Dillon, Colorado 80435 (the "Premises"). [#19 at ¶ 4]. Defendant Dillon Companies is a "landowner", as defined by Colo. Rev. Stat. § 13-21-115(1), of the Premises. [#32 at ¶ 1; #36 at ¶ 1]. When Plaintiffs arrived at the Premises, Ms. Riconti entered the loading dock area to exchange paperwork and discuss Plaintiffs' delivery with City Market employees, while Mr. Riconti initially waited in the truck. [#36 at ¶ 4; #38 at ¶¶ 23–26]. Mr. Riconti subsequently exited the truck and entered the Premises's loading dock area through a door that opened for him. [#36 at ¶ 4; #38 at ¶ 25].

When Mr. Riconti entered the loading dock area of the Premises, he stood at a podium inside the loading dock with his back to the loading dock door.[3] [#32 at ¶ 5 (citing #32-3 at 52:18-53:1; 56:12-24)].[4] The "dock plate", located within the loading dock, raises or lowers to level out the loading dock while a truck is unloaded and is operated by pulling one of two chains on the dock plate; when the dock plate chain is pulled, the dock plate moves. [*Id.* at ¶ 6, 8; #36 at ¶¶ 6, 8]. As Mr. Riconti stood in the loading dock area of the premises with his back to the loading

---

(quotations omitted), but "[u]ltimately, 'the district court is vested with broad discretion in deciding whether to enforce the parties' stipulation or not.'" *Id.* at 1188 (quoting *Miller v. Eby Realty Grp. LLC*, 396 F.3d 1105, 1116 (10th Cir. 2005)) (brackets omitted). In reviewing the Scheduling Order, this court finds that the stipulated fact that "Plaintiffs were making a freight delivery" is not equivalent and does not necessarily establish that Mr. Riconti was "working as a truck driver for Roadlink Express." *Compare* [#19 at 3] *with* [#32 at ¶ 2; #36 at ¶ 2]. Therefore, the court includes the stipulated statement as an undisputed fact, but declines to conclude that it is undisputed that Mr. Riconti was working as a truck driver based on the stipulated fact in the Scheduling Order.

[3] Defendant "admits that at the time of incident Plaintiff Patrick Riconti <u>claims</u> he was standing near the podium inside the loading dock with his back to the loading dock door." [#36 at ¶ 5 (emphasis added)]. But Defendant does not offer any evidence disputing Mr. Riconti's claim, and at summary judgment, it is incumbent upon Defendant to offer sufficient, competent, contradictory evidence to establish a genuine factual dispute. *Expeditors Int'l of Washington, Inc. v. United Parcel Serv. Co.*, 370 F. Supp. 3d 1265, 1268–69 (D. Colo. 2019), appeal dismissed, No. 19-1115, 2019 WL 4725681 (10th Cir. July 1, 2019). Therefore, this court considers this fact undisputed.

[4] When citing to deposition testimony, this court refers to the document number assigned by the court' Electronic Court Filing ("ECF") but refers to the page and line number assigned in the original transcript, for purposes of consistency.

dock door, Ousmane Sow ("Mr. Sow"), a City Market employee, pulled the dock plate chain to begin unloading Plaintiffs' truck. [#32 at ¶ 7; #36 at ¶ 7]. Another City Market employee, Abdoul Diallo ("Mr. Diallo"), did not operate the dock plate but was—in some capacity—present with Mr. Sow at the time of the incident. [#36 at ¶ 27; #38 at 12].

At that time, part of a "U-Boat" cart was resting on the dock plate. [#32 at ¶ 10; #36 at ¶ 10]. As Mr. Sow pulled the dock plate chain, the dock plate began to move, causing the U-Boat cart to roll into Mr. Riconti's backside as he faced away from the dock. [#32 at ¶ 10; #36 at ¶ 10]. The Parties agree that Mr. Riconti was injured as a result of U-Boat cart's contact with his back but dispute the extent of his injuries. [#32 at ¶ 11; #36 at ¶ 11].

Believing Dillon Companies breached its duty to Mr. Riconti under Colorado's Premises Liability Act, C.R.S. § 13-21-115, and as a result of this breach proximately caused Ms. Riconti's loss of consortium, Plaintiffs initiated this action on October 11, 2018 in the District Court of Summit County, Colorado. *See* [#3]. Dillon Companies removed the action to the federal United States District Court for the District of Colorado on November 9, 2018. *See* [#1].

## II. Premises Liability Under Colo. Rev. Stat. § 13-21-115

In Colorado, an invitee "may recover for damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew or should have known." Colo. Rev. Stat. § 13-21-115(3)(c)(I). As defined by the Act, an "invitee" is a "person who enters or remains on the land of another to transact business in which the parties are mutually interested or who enters or remains on such land in response to the landowner's express or implied representation that the public is requested, expected, or intended to enter or remain." *Id.* at § 13-21-115(5)(a). By contrast, a licensee is a "person who enters or remains on the land of another for the licensee's own convenience or to advance his own interests, pursuant to the

5

landowner's permission or consent." *Rieger v. Wat Buddhawararam of Denver, Inc.*, 338 P.3d 404, 407 (Colo. App. Nov. 21, 2013) (citing Colo. Rev. Stat. § 13-21-115(2)(b)). A licensee may only recover damages caused by the landowner's unreasonable failure to exercise reasonable care with respect to dangers created by the landowner of which the landowner actually knew, or by the landowner's unreasonable failure to warn of damagers not created by the landowner which are not ordinarily present on the property of the type involved and of which the landowner actually knew. *Id*.

The Act is the exclusive remedy for persons injured on the property of another. *See Vigil v. Franklin*, 103 P.3d 322, 326 (Colo. 2004). Plaintiffs proceed on a theory that Mr. Riconti constitutes an invitee, which requires the Plaintiffs to prove: (1) Dillon Companies is a "landowner" as defined by the Act; (2) Mr. Riconti was an "invitee" as defined by the Act; (3) Dillon Companies "actually knew or should have known" of the danger on its premises; and (4) Dillon Companies' conduct was "an unreasonable failure to exercise reasonable care." *See Moss v. Home Depot U.S.A., Inc.*, 2019 WL 5095714, at * (D. Colo. Sept. 11, 2019) (quoting *Giblin v. Sliemers*, 147 F. Supp. 3d 1207, 1211 (D. Colo. 2015)).

"Courts determine, as a matter of law, whether the injured person was a trespasser, a licensee, or an invitee." *Axelrod v. Cinemark Holdings, Inc.*, 65 F. Supp. 3d 1093, 1097 (D. Colo. 2014). However, "whether a landowner should have known of a particular danger generally is a question of fact, not law." *Young v. Walmart, Inc.*, No. 18-cv-1562-WJM-NRN, 2019 WL 4954644, at *3 (D. Colo. Oct. 8, 2019) (quoting *Axelrod*, 65 F. Supp. 3d at 1097). "[A] court cannot grant summary judgment on what is normally a question of fact under Colorado law unless the facts so overwhelmingly and inarguably point in [the movants'] favor that it cannot be said that

a reasonable jury could possibly side with the [non-movants] on that question." *Axelrod*, 65 F. Supp. 3d at 1102.

## III. Application of Fed. R. Civ. P. 56 to Plaintiffs' Premises Liability Act Claim

The Parties do not dispute the first and fourth elements of a Colorado Premises Liability Act cause of action; it is undisputed that (a) Dillon Companies is a landowner for purposes of the Act, and (b) Mr. Riconti was injured when the U-Boat cart struck him in the back. The Parties disagree whether Mr. Riconti was an invitee or licensee of the Premises, and whether Dillon Companies knew or should have known of the danger created by the U-Boat cart's placement on the dock cart. I address each in turn.

First, I find as a matter of law that Mr. Riconti was an invitee on the Premises. However, for the reasons discussed below, I conclude that summary judgment on Plaintiffs' Premises Liability Act claim is precluded because there is a genuine issue of material fact as whether Dillon Companies knew or should have known of the danger created by the U-Boat cart.

***Whether Mr. Riconti was an invitee on the Premises.*** In support of their Motion for Partial Summary Judgment, Plaintiffs argue that Mr. Riconti was an invitee because he was at the Premises "to transact business in which he and Defendant had a mutual interest—delivery of goods to Defendant ordered by Defendant or its contractor—and therefore [Mr. Riconti] was on the Premises with Defendant's express or implied representation that he was 'expected or intended to enter.'" [#32 at 6]. In Colorado, a delivery driver is properly characterized as an invitee under the Colorado Premises Liability Act. *See Averyt v. Wal-Mart Stores, Inc.*, 302 P.3d 321, 324 (Colo. App. 2013) (finding that defendant store "knew, or should have known," about "a danger to the safety of invitees, including the [delivery] driver, who used the store's loading docks.").

7

In its Response, Defendant argues that Mr. Riconti testified that he was only accompanying his wife [#36 at ¶ 2 (citing #36-1 at 50:4-51:11)] and from October 14, 2014 through at least the time of the incident, Mr. Riconti was disabled as defined by the Social Security Act. [*Id.* at ¶ 19]. Specifically, Defendant denies Plaintiff's proffered undisputed fact that "[o]n October 20, 2016, Plaintiff Patrick Riconti was working as a truck driver for Roadlink Express," and states that "[o]n October 20, 2016, Plaintiff Patrick Riconti was accompanying his wife, as she was making a delivery at the Premises." *Compare* [#32 at ¶ 2] *with* [#36 at ¶ 2]. Defendant further argues that Mr. Riconti "has not engaged in substantial gainful activity, as defined by the Social Security Administration" since October 14, 2014 and argues that he "was unable to perform any past relevant work, including work as a truck driver [ . . . ] at the time of the incident[.]" [#36 at ¶¶ 20, 21]. Therefore, argues Defendant, Mr. Riconti could not have been making the delivery and was thereby merely a licensee as he accompanied Ms. Riconti during *her* delivery.

In Reply, Plaintiffs explain that Mr. Riconti applied for Social Security Disability Benefits in December 2014 after he sustained a back injury in October 2014.[5] [#38 at 3]. However, Mr. Riconti "had a right L4-5 microdiscectomy in April 2015 with 'great results leaving him without significant back or leg pain'" and enabling him to "return[] to work as a truck driver in or around the end of May or beginning of June 2015." [*Id.*; #38-6 at P000518-20; #38-7 at 26:15-22; #38-8 at ¶ 9]. Mr. Riconti did not learn of his Social Security Disability Benefits until after he was injured at City Market in October 2016. [#38 at 3; #38-5 at 94:18-95:3].

First, the court finds that Mr. Riconti's deposition testimony does not refute that he was working as a truck driver for Roadlink Express on October 20, 2016. Specifically, in the testimony cited by Defendant, Mr. Riconti testified that his wife was driving, [#36-1 at 50:19-20], but in no

---

[5] The court resolved Plaintiffs' argument without regarding to the stipulated fact above. *See supra*, n.1.

way conceded that he was not working as a truck driver on that day. Nor does Defendant point to any authority to suggest that Mr. Riconti's admission that he was not driving the truck necessarily means that he was not working as a truck driver for Roadway Express that day.

The court now considers Defendant's arguments that Mr. Riconti was not employed as a truck driver that day because he was considered disabled as of that date under the Social Security Act. The case was before the Office of Disability Adjudication and Review on a request for hearing dated March 19, 2015. [#36-3 at 1 (because "[t]he evidence of record support[ed] a fully favorable decision . . . no hearing [was] held.")]. In order to qualify for Social Security disability benefits, an individual must not be engaged in substantial gainful activity. *See* 20 C.F.R. § 404.1520(a)(4)(v). *See also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988). The Social Security Administration Decision cited by Defendant found that Mr. Riconti "ha[d] been disabled from October 14, 2014, through the date of th[e] decision," [#36-3 at 1], i.e., that he had not engaged in substantial gainful activity. The Decision is dated September 19, 2016—approximately a month before Mr. Riconti's injury at City Market. [*Id.*]. The court notes and is concerned about the inconsistency between Mr. Riconti's position here, i.e., that he was employed by Roadlink Express as a truck driver as of October 20, 2016, and his award of Social Security disability benefits.

But the record does not include any statements on the part of Mr. Riconti that establish that he took the position, or made any representations, that he was unable to work as a truck driver on October 20, 2016—to the Social Security Administration or otherwise. Indeed, no hearing before an Administrative Law Judge was held. Moreover, there is not a finding from or discussion by the Social Security Administration as to whether Mr. Riconti's team truck driving constitutes a "substantial gainful activity" under the Social Security Act or not. In addition, an "Owner Operator

9

Statement" from Roadlink Express identifies Mr. Riconti, not Ms. Riconti, as the owner/operator performing truck driving services for the company on the date of the incident. [#38 at 11; #38-6 at 2]. And Defendants cite no authority, nor could this court independently find any, that stood for the proposition that a finding of disability under the Social Security Act precludes Mr. Riconti from being an invitee for purposes of the Colorado Premises Liability Act.

Thus, based on the evidence in the record before it, this court finds that the evidence proffered by Defendant does not refute the evidence offered by Plaintiffs. Indeed, the evidence advanced by both parties is not necessarily contradictory and, to the extent that Mr. Riconti was untruthful with the Social Security Administration, that issue is not before the court. *See e.g.*, *Fowler v. Bowen,* 876 F.2d 1451 (10th Cir. 1989) (discussing the definition of "substantial gainful activity" and fraud related to an initial determination of disability and/or overpayment). Given the absence of a genuine dispute of material fact as to whether Mr. Riconti was an invitee or licensee on the Premises at the time of his injury, I conclude as a matter of law that Mr. Riconti was an invitee on the Premises.

Accordingly, under the Colorado Premises Liability Act, the next question is whether Defendant knew or should have known of the danger created by the U-Boat cart's presence on the dock cart. Here, Defendant is liable under the Act only if the answer to the foregoing question is in the affirmative.

***Whether, as a matter of law, Dillon Companies knew or should have known of the danger created by the U-Boat cart's presence on the dock cart.*** Plaintiffs correctly assert that, under the doctrine of respondeat superior, Dillon Companies can be held liable for the torts of its employees, including Mr. Sow. [#32 at 8]. *See also Stokes v. Denver Newspaper Agency, LLP*, 159 P.3d 691, 693 (Colo. App. 2006) ("Under the respondeat superior doctrine, an employer is liable for torts of

10

an employee acting within the scope of employment."). In Colorado, "for an invitee to prevail on a premises liability claim, she must prove: (1) the landowner 'actually knew or should have known' of the danger to the invitee and (2) the landowner 'unreasonably failed to exercise reasonable care' to protect the invitee from that danger.'" *Lombard v. Colorado Outdoor Educ. Center, Inc.*, 187 P.3d 565, 570 (Colo. 2008). "[W]hether a landowner should have known of a particular danger generally is a question of fact, not law," *Young*, 2019 WL 4954644, at *3 (quoting *Axelrod*, 65 F. Supp. 3d at 1097), and the Premises Liability Act's "requirement that the landowner 'actually knew or should have known' requires a showing of actual or constructive knowledge." *Lombard*, 187 P.3d at 572.

In its Response, Defendant argues that there is no evidence that any Dillon Companies employee had actual knowledge of the U-Boat cart's presence on the dock plate, and further argues that "uncontested evidence indicates that neither Mr. Sow nor Mr. Diallo saw the portion of the u-boat resting on the dock plate before pulling the chain to operate the dock plate." [#36 at 8]. First, in a "Witness Statement" recorded shortly after the incident, Mr. Sow states that "[o]n Thursday October 20th at around 5 PM I was unloading a truck and when I was lifting the ramp there was a u-boat on it that fell on the driver on his back." [#32-2 at 13, 22]. Second, in a "Witness Statement" attributed to Mr. Diallo, he explains that he and Mr. Sow "haven't [sic] seen that a part of a cart was on the dock." [*Id.* at 13-14, 23].

Plaintiffs do not offer any evidence to support a finding that a Dillon Companies employee had actual knowledge of the U-Boat's presence on the dock plate. In addition, Plaintiffs appear to concede that Mr. Sow did not see the U-Boat cart prior to operating the dock plate. [#32 at 7 ("Mr. Sow nevertheless <u>failed to see the cart on the dock plate</u> and remove it prior to pulling the chain[.]" (emphasis added)). Accordingly, I conclude that Plaintiffs have failed to proffer evidence

11

sufficient to support a finding that Defendant had actual knowledge of the danger posed by the U-Boat cart.

Nevertheless, Plaintiffs predominantly argue that Dillon Companies is liable under a "constructive knowledge" theory—in other words, that Dillon Companies should have known that the U-Boat cart created an unreasonable danger when it was on the dock plate. Specifically, Plaintiffs argue that because "a cart resting on the dock plate presents a potential hazard and should be removed prior to the operation of the dock plate," and "Mr. Sow nevertheless failed to see the cart on the dock plate and remove it prior to pulling the chain," Dillon Companies necessarily "had constructive knowledge of the danger presented to [Mr. Riconti] by the cart on the dock plate, and unreasonably failed to exercise reasonable care to protect [Mr. Riconti] from danger." [*Id.* at 7–8].

Defendant argues in Response that Dillon Companies' Rule 30(b)(6) representative only testified that an U-boat cart laying on a dock plate "can be" a potential hazard. [#36 at 9 (brackets omitted)]. This alone, argues Defendant, does not demonstrate that the U-Boat cart's presence on the dock plate was inherently dangerous because "[a]n object itself is not inherently a dangerous condition or a dangerous condition per se simply because under certain circumstances it could cause harm." [#36 at 9 (citing *Castillo v. Chief Alternative, LLC*, 140 P.3d 234, 238-39 (Colo. App. 2006))]. Upon review of the record, I find Defendant's representative testified that a U-boat cart "can be" stored on the dock plate but admitted that, if so stored, a U-boat cart should be removed prior to pulling the dock plate's chain. [#32-2 at 51:8-15].

Without more, I find that Plaintiffs proffered evidence that Dillon Companies' representative testified that a U-Boat cart "can be" a potential hazard if not removed falls short of presenting facts that "so overwhelmingly and inarguably point in [Plaintiffs'] favor that it cannot

12

be said that a reasonable jury could possibly side with the [Defendant] on that question." *Axelrod*, 65 F. Supp. 3d at 1102. Accordingly, the "court cannot grant summary judgment on what is normally a question of fact under Colorado law." *Id.*

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)  Plaintiffs' Motion for Partial Summary Judgment [#32] is **DENIED**.


DATED: December 17, 2019  BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge